2000 OK CIV APP 13

**MERCY MEMORIAL HOSPITAL, Own Risk, Petitioner,**

v.

**Kathern HULL and The Workers' Compensation Court, Respondents.**

**No. 93,058.**

Court of Civil Appeals of Oklahoma, Division No. 3.

Oct. 15, 1999.

William W. Wiles, Jr., Oklahoma City, Oklahoma, For Petitioner.

Greg Barnard, the Bell Law Firm, Norman, Oklahoma, For Respondent Kathern Hull.

BUETTNER, P.J.:

¶1 Petitioner Mercy Memorial Hospital (Employer) appeals from the trial court's finding that Respondent Kathern Hull suffered an injury to her right knee arising out of and in the course of her employment. Hull alleged that she turned while working as a nurse and injured her knee. Because we find the trial court's decision is supported by competent evidence, we sustain the order.

¶2 Hull was employed as a licensed practical nurse by Employer, a hospital in Healdton. Hull testified that on September 19, 1997, she began working at 2:45 p.m. and that around 8:30 p.m. she went to a patient's room to respond to the patient's call light. As she was leaving the patient's room, the quadriplegic patient again signaled the nurse call light. Hull testified she turned quickly because she thought the patient may have been choking. Hull testified that as she turned, her right knee made a loud pop. Hull testified that at the time she was wearing required rubber soled nursing shoes and that the hospital had tile floors. Hull testified that her knee had never "gone out" on her before and that after the pop her knee began to sting. She continued to work after her knee popped. Hull saw her family doctor, Dr. Treadwell, September 29, 1997. Dr. Treadwell prescribed medication and Hull continued to work until October 12, 1997, at which time her knee locked up and she was unable to work.

¶3 Dr. Treadwell referred Hull to Dr. Cruse, who performed arthroscopic surgery October 16, 1997. Hull's knee became infected and she was admitted to Hillcrest Hospital October 20, 1997 for eight days, during which time she was given antibiotics and participated in physical therapy. Hull remained on antibiotics for eight weeks and she continued with physical therapy for six weeks. Hull was unable to work from October 12, 1997 until December 29, 1997, at which time Dr. Cruse released her to return to work.

¶4 Hull went to see Dr. Newey in Healdton January 15, 1998. Dr. Newey performed an MRI which revealed necrosis of the condyle in Hull's right knee. Dr. Newey referred Hull to Dr. Greisman. In February 1998, Hull was referred to Dr. Tkach who placed her in an "unloader brace" so that she was able to continue working. Dr. Tkach performed arthroscopic surgery on Hull May 18, 1998. Dr. Tkach put a bone plug in Hull's knee and informed her that she may need a total knee replacement in the future. Hull remained off work from May 18, 1998 until Dr. Tkach released her to return to work June 30, 1998.

¶5 Hull testified that before she injured her knee she held two full time jobs and that she had to quit her second job, as a home health nurse, because she was unable to bend her knee. She further testified that she has knee pain with every step and that she is no longer able to dance or clean her home.

¶6 Hull filed her Form 3 October 28, 1998. Employer never filed a Form 10, in which it could have denied Hull's injury. Hull saw Dr. McClure, Hull's medical expert, December 3, 1998 and Dr. Young, Employer's medical expert, March 3, 1999. Trial was held April 12, 1999. The trial court filed its order April 27, 1999. In its order, the trial court found that Hull suffered an injury to her right knee arising out of and in the course of her employment. The trial court further held that Hull was TTD from October 12, 1997 through December 29, 1997 and from May 18, 1998 through June 30, 1998. The trial court found that Hull suffered 26% PPD to the knee, for which the court ordered compensation for 63.5 weeks, totaling $13,525.50. The trial court denied Hull's request for continuing medical maintenance.

¶ 7 On appeal, Employer alleges that Hull failed to meet her burden of proving that her injury arose out of her employment. Employer concedes that Hull was injured in the course of her employment, but Employer argues that Hull's employment did not expose her to a risk of injury greater than that to which the general public is exposed, and that, accordingly, Hull's injury did not arise out of her employment. Employer does not allege, and the evidence does not reveal, that Hull suffered from a prior knee injury or idiopathic knee problem.

¶ 8 We will sustain the trial court's order if it is supported by any competent evidence. *Parks v. Norman Municipal Hospital,* 1984 OK 53, 684 P.2d 548. To prove an injury is compensable, the claimant must prove an accidental injury which arose out of and in the course of employment. 85 O.S.Supp.1997 § 3(10). At the time of her injury, claimant was performing her job-she was turning to respond to a patient as required by her employment. Both Hull's and Employer's medical experts, Dr. McClure and Dr. Young, concluded that Hull was injured when she turned while doing her job.

¶ 9 Employer relies primarily on *Odyssey/Americare of Oklahoma v. Worden,* 1997 OK 136, 948 P.2d 309. In that case, the claimant slipped on wet grass at her home while walking to her car to leave for work. The Supreme Court held that the claimant's injury did not arise out of her employment. The court noted three categories of risk an employee may encounter in the course of employment: 1) risks solely connected with employment, which are compensable; 2) purely personal risks,[1] which are not compensable; and 3) neutral risks(the court used weather as an example). *Id.* at 311. The court determined that whether a neutral risk is employment-related or personal is a question of fact. The court relied on *American Management Systems, Inc. v. Burns,* 1995 OK 58, 903 P.2d 288, for its holding that a claimant must demonstrate a hazard "other than that which affects the public in general," in order to prove an employment-related risk. In the instant case, Employer urges that Hull failed to establish a risk of knee injury greater than that suffered by the general public in turning. In *Worden,* the court concluded that the claimant encountered the neutral risk of wet grass, for which her employment exposed her to no greater risk than the general public.

¶ 10 In the instant case, Hull was performing Employer's work at the time she was injured. Further, she was wearing rubber-soled shoes as required by Employer. Hull would not have been in the patient's room nor would she have turned abruptly, but for performing her assigned tasks. Even if we assume that turning around is a neutral risk, then whether it is employment-related or personal is a question of fact which will not be disturbed on appeal if there is any competent evidence to support it. *Worden,* 948 P.2d at 311. In this case, there is evidence that Hull turned quickly as required by her employment and was injured. There is competent evidence to support the trial court's decision that Hull's injury arose out of and in the course of employment.

¶ 11 SUSTAINED.

¶ 12 GARRETT, J., and JOPLIN, J., concur.

---

1. Crime has been offered as an example of a purely personal risk. See *Stroud Municipal Hospital v. Mooney,* 1996 OK 127, 933 P.2d 872 (Opala, J., concurring).